#### IN THE UNITED STATES DISTRICT COURT
#### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul Abraham, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 5:23-3823-RMG |
| vs. ) | |
| ) | |
| Martin J. O'Malley, Commissioner of ) | |
| Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

    Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 D.S.C., this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 14, 2024, recommending that the Commissioner's decision be affirmed. (Dkt. No. 17). Plaintiff filed objections to the R & R and the Commissioner filed a reply. (Dkt. Nos. 18, 19). For the reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further proceedings consistent with this Order.

### Legal Standard

    The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection

is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Administrative Law Judge ("ALJ") found that Plaintiff had degenerative disc disease and obesity which qualified as severe impairments because they significantly limited his ability to perform basic work activities. (Dkt. No. 7-8 at 8). The ALJ nonetheless found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform less than the full scope of light work. Limitations on Plaintiff's RFC of light work included only occasional climbing stairs and

ramps, avoidance of climbing ladders, ropes, or scaffolds, and occasional stooping, kneeling, crouching, and crawling. (*Id.* at 11).

## Discussion

It is important at the outset to note that Plaintiff was 51 years old on his alleged onset date of July 1, 2015. (Dkt. No. 17 at 2). The ALJ found that Plaintiff was limited to less than the full scope of light work, the lowest level of function that a claimant can have at ages 50-54 and not generally be deemed disabled under the Social Security Act. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(g).[1] Under these circumstances, the Court must carefully analyze any legal errors because a seemingly minor matter could tip the balance in favor of a finding of disability.

A.     Obesity

Plaintiff objects to the ALJ's evaluation of Plaintiff's obesity, particularly the ALJ's alleged failure to consider the impact of Plaintiff's obesity on other severe and non-severe impairments. The ALJ found that Plaintiff's obesity was a severe impairment and then considered the condition in accord with SSR 19-2p, which concerns "evaluating cases involving obesity." (Dkt. No. 7-8 at 11). SSR 19-2p specifically addresses how obesity interacts with and may exacerbate other medical conditions. 2019 WL 2374244 (2019). The ALJ then referenced record evidence which the ALJ viewed as inconsistent with any significant impairment associated with Plaintiff's obesity. This includes the fact that claimant is able to walk daily two miles for exercise, feed and walk his dog two times a day, perform light cleaning and laundry for an hour at a time, and drive and shop for food and household items on a regular basis. (Dkt. No.

---

[1] A claimant between ages 50-54 with a RFC limited to sedentary work is generally deemed disabled under the Social Security Act

7-8 at 15). The ALJ found that "limiting the claimant to light work with additional postural limitations . . . fully accommodates his [obesity] impairment." (*Id*.).

Plaintiff argues that the ALJ simply did not say enough to explain how Plaintiff's obesity affected his ability to perform work. (Dkt. No. 18). After reviewing the record and the ALJ's decision, the Magistrate Judge concluded that the "ALJ did what SSR 19-2p requires" and that substantial evidence supports the ALJ's treatment of obesity. (Dkt. No. 17 at 13-16). The Court agrees. The ALJ's decision meets the requirements of SSR 19-2p and provides a reasonable and well supported basis for the treatment of obesity in this case. The Court adopts Sections I, II(A), II(B), and II(C)(1)(a) of the R & R (Dkt. No, 17 at 1-16) as the Order of the Court.

B.    **Sleep Apnea**

Plaintiff objects to the ALJ's determination that his sleep apnea was not a severe impairment. A severe impairment is one that "significantly limits" a claimant's physical or mental condition to perform basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment must be established by "medically acceptable clinical and laboratory diagnostic techniques." §404.1508.

The ALJ's assessment of Plaintiff's sleep apnea was very limited. At Step Two, after finding that Plaintiff suffered from the severe impairments of degenerative disc disease and obesity, the ALJ made reference to other impairments of Plaintiff which were presumably not severe. Among these was sleep apnea. The entire discussion of sleep apnea in the ALJ's decision was the following statement: "It was noted that the claimant's symptoms improved with the use of a CPAP machine." (Dkt. No. 7-8 at 8). The record contains a far more complicated story.

Plaintiff completed a sleep study on June 24, 2019 at the Conway Medical Center's Sleep Disorders Center.  He was diagnosed with "severe obstructive sleep apnea" which was improved with a CPAP machine.  It was recommended that due to this diagnosis Plaintiff not operate heavy equipment or drive "while feeling drowsy." (Dkt. No. 7-13 at 315-317).  Subsequent notes in Plaintiff's medical record indicated he was using the CPAP machine every night and "he is more awake and energetic during daytime after he uses it." (*Id*. at 310, 312).  However, a note by Luis Insignares, M.D., who evaluated Plaintiff on August 28, 2019 for "fatigue and memory issues," documented that Plaintiff had severe sleep apnea and "still feels a little sleepy throughout the day." (*Id.* at 189).  Dr. Insignares concluded that Plaintiff's sleep apnea was "not controlled" and his CPAP machine needed to be retested.  He observed that Plaintiff's sleep apnea "may be causing daytime fatigue." (*Id*. at 191).  Another treating doctor, George Sandoz, M.D., a board certified neurologist, assessed Plaintiff for memory loss on October 16, 2019 and determined that Plaintiff's sleep apnea was a significant contributing factor to his memory loss. (*Id*. at 294-296).  In sum, the record is conflicted regarding whether Plaintiff's sleep apnea condition was essentially resolved by the use of the CPAP machine or persisted as a significant problem for Plaintiff contributing to daytime fatigue and memory loss.

The ALJ's decision fails to sufficiently address and explain the determination that Plaintiff's sleep apnea was not a severe impairment and to weigh the conflicting evidence regarding the impact of Plaintiff's sleep apnea on his ability to perform basic work.  Further, the Commissioner's argument that any error by the ALJ regarding the assessment of sleep apnea was harmless is not clear to the Court in light of the highly marginal RFC of Plaintiff.  Reversal and

remand are necessary to fully analyze and weigh the record in this matter and to explain why Plaintiff's sleep apnea was or was not a severe impairment.

  C. **Carpal Tunnel Syndrome**

Plaintiff further objects to the determination of the ALJ that his diagnosed carpal tunnel syndrome ("CTS") was not a severe impairment. The sole statement in the ALJ decision regarding CTS is as follows: "The claimant has also been diagnosed with carpal tunnel syndrome." Several exhibits are thereafter cited. (Dkt. No. 7-8 at 8).

The records referenced by the ALJ (but not described) include a nerve conduction study performed on January 15, 2015 by Dr. Sandoz. He found that Plaintiff had "moderate/severe right CTS, without denervation." (Dkt.. No. 7-7 at 365). An office note of Dr. Sandoz of February 19, 2015 diagnosed Plaintiff with carpal tunnel syndrome and directed treatment as "continue with wrist splint." (*Id*. at 390). The minimal discussion regarding Plaintiff's CTS is particularly concerning because this Court reversed an earlier decision of the ALJ because of the ALJ had "erroneously found that there was not medically objective evidence in the record to support Plaintiff's claim of carpal tunnel syndrome. . . as a severe impairment." *Abraham v. Kijakazi*, C.A. No. 8:20-3272, 2021 WL 4776476 (D.S.C. 2021).

Little imagination is required to understand that moderate to severe carpal tunnel syndrome can significantly impact a claimant's work performance, standing alone and in combination with Plaintiff's severe impairments of degenerative disc disease and obesity. The Commissioner's argument that any error by the ALJ in failing to explain why Plaintiff's CTS was not a severe impairment was harmless is unpersuasive to the Court in light of Plaintiff's

marginal RFC. The ALJ's failure to explain why Plaintiff's CTS was or was not a severe impairment requires reversal and remand to the Commissioner.

## Conclusion

Based on the foregoing, the Court **ADOPTS** Sections I, II(A), II(B), and II(c)(1)(a) of the R & R as the Order of the Court, **REVERSES** the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) relating to the ALJ's treatment of sleep apnea and carpal tunnel syndrome, and **REMANDS** the matter to the Commissioner for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
July 23, 2024